# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **COURTNEY HAYES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 10 C 7095** |
| | ) | |
| **ELEMENTARY SCHOOL DISTRICT** | ) | |
| **NO. 159 et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motion for summary judgment. For the reasons stated below, the motion for summary judgment is granted in its entirety.

## BACKGROUND

In July 2008, Plaintiff Courtney Hayes (Hayes) was allegedly hired by Defendant Elementary School District No. 159 (District) as its Business Manager. Hayes allegedly entered into a one-year contract with the District. In April 2009, the District allegedly entered into a three-year contract with Hayes (2009 Contract). Hayes took leave due to a pregnancy, and on September 9, 2009, Ronald Wynn (Wynn), the District Superintendent, allegedly received a letter from Hayes'

1

physician (First Physician Letter), stating that Hayes could not return to work until September 21, 2009 due to medical complications. On September 12, 2009, the members of Defendant Board of Education of Elementary School District No. 159 (Board) were informed of the contents of the First Physician Letter. Soon thereafter, Wynn allegedly hired someone to temporarily replace Hayes as the District's Business Manager during her absence.

On or about September 22, 2009, Wynn and the Board allegedly received another letter from Hayes' physician (Second Physician Letter), stating that Hayes could not return to work until after she had given birth because of pregnancy complications. Hayes also allegedly sent a letter to the District, requesting as an accommodation that her leave allowed under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.*, be allowed to run after her disability leave, rather than concurrently. (Compl. Ex. 7). In response to the First Physician Letter, Second Physician Letter, and Hayes' request for an accommodation, the District allegedly gave Hayes the paperwork needed for requesting leave under the FMLA. Hayes contends that she completed the FMLA paperwork and signed it on October 2, 2009. On October 13, 2009, the District allegedly notified Hayes that her FMLA leave request was approved and that her FMLA leave would run concurrently with her accumulated paid leave beginning September 21, 2009. In late October or early November, the District also allegedly requested that Hayes propose reasonable accommodations that would allow her to return to work.

In early November 2009, Hayes allegedly submitted to the Board a proposal of

reasonable accommodations for her return to work, including that she be allowed to work three days per week from the office and two days per week from home. Shortly thereafter, the District allegedly denied the requested accommodations, informed Hayes that she did not have a current employment contract with the District, and stated that Hayes therefore did not have a right to disability leave. The District allegedly sent Hayes a letter on December 17, 2009, claiming that she had not provided the District with the information the District had required relating to her accommodations. The District also allegedly informed Hayes that her FMLA leave expired on December 14, 2009, and that she would be subject to termination if she did not return to work. Hayes elected not to return to work as required. On January 15, 2010, the District allegedly terminated Hayes' employment.

Hayes includes in her complaint a claim alleging discrimination because of her pregnancy in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.*, as amended by the Pregnancy Discrimination Act (PDA), 42 U.S.C. § 2000e(k) (Count I), a Title VII retaliation claim (Count II), claims alleging discrimination because of her disability in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111 *et seq.* (Count III), an ADA retaliation claim (Count IV), a FMLA retaliation claim (Count V), a FMLA interference claim (Count VI), and a breach of contract claim (Count VII). Defendants previously moved to dismiss counts II, III, IV, VI, and VII and moved to strike the requests for exemplary damages in Counts I-IV. On March 21, 2011, the court denied Defendants' partial motion to dismiss and granted Defendants' motion to strike the

requests for exemplary damages in Counts I-IV.  Defendants now move for summary judgment on all claims.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009).  A "genuine issue" of material fact in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000).  In ruling on a motion for summary judgment, the court must consider the record as a whole, in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party.  *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

**DISCUSSION**

I.  Title VII Discrimination Claim (Count I)

Defendants move for summary judgment on the Title VII discrimination claim.  The court notes at the outset that whether or not Hayes should have received certain leave for her pregnancy is not before this court in this case.  According to Seventh Circuit precedent, Title VII and the PDA do not require an employer to give a pregnant employee certain amounts of leave.  *See Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 547 (7th Cir. 2011)(explaining that "an employer is not required to provide an accommodation to a pregnant employee unless it provides the same accommodation to its similarly situated nonpregnant employees").  The statutes require that an employer not discriminate against pregnant employees in an unlawful manner.  *Id.* at 547 (stating that the PDA merely clarifies that under Title VII, "discrimination based on a woman's pregnancy is, on its face, discrimination because of her sex."  *Id.* (internal quotations omitted)(quoting *Hall v. Nalco Co.,* 534 F.3d 644, 646 (7th Cir. 2008)).  The PDA requires only that "an employer ignore a female employee's pregnancy and treat that employee the same as it would have if she were not pregnant."  *Id.* at 548.

A plaintiff who is bringing a Title VII discrimination claim and who is seeking to defeat a defendant's motion for summary judgment can proceed under either the direct or indirect method of proof.  *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 823-24 (7th Cir. 2011).  To proceed under the indirect method of proof, a plaintiff

must establish a *prima facie* case of discrimination by showing that: "(1) she was pregnant and her employer knew she was pregnant; (2) she was performing her job duties satisfactorily; (3) she was terminated; and (4) similarly situated, nonpregnant employees were treated more favorably." *Serednyj*, 656 F.3d at 550. If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to point to a "legitimate, nondiscriminatory reason for terminating her," and if such a reason is provided, the burden shifts back to the plaintiff to show that the given reason was a pretext for unlawful discrimination. *Id.* at 551.

To proceed under the direct method of proof, a plaintiff must show "through direct or circumstantial evidence, that the employer's decision to take the adverse job action against her was motivated by an impermissible purpose, such as sex." *Id.* at 548 (stating, in addition, that "[d]irect evidence is evidence that, if believed by the trier of fact, would prove discriminatory conduct on the part of the employer without reliance on inference or presumption"). To proceed under the direct method with circumstantial evidence, a plaintiff must show that there is "a convincing mosaic of circumstantial evidence from which a reasonable juror could infer intentional discrimination by the decisionmaker." *Id.*

A.  Indirect Method of Proof

Defendants argue that Hayes cannot proceed under the indirect method of proof because Hayes has not pointed to similarly-situated employees outside the protected class, has not shown that she was performing her job duties satisfactorily,

and has not shown that the given reason for Hayes' termination was a pretext for unlawful discrimination. In response to the instant motion, Hayes has not argued that she can proceed under the indirect method of proof or even addressed the elements for a *prima facie* case under the indirect method of proof. Hayes in fact appears to challenge whether the indirect method of proof is even applicable to her Title VII discrimination claim. For example, Hayes contends that Defendants improperly point to similarly-situated employees in their motion to show how Defendants "treated other people." (Ans. 7). Hayes argues that "such reverse cooperators do not entitle [Defendants] to summary judgment, because [Defendants] treating some persons legally does not immunize [them] from treating other persons illegally." (Ans. 7). While the general principal that simply because an employer treats some employees well does not mean that the employer can treat another employee unlawfully is correct, Hayes' contention that the treatment of similarly-situated employees is not relevant for the purposes of the instant motion is incorrect. As indicated above, under well-established law in the Seventh Circuit, evidence concerning the treatment of similarly-situated employees as compared to a plaintiff is part of the *prima facie* case at the summary judgment stage. *Serednyj*, 656 F.3d at 550-51. Therefore, Hayes has not shown that she can proceed under the indirect method of proof.

B. Direct Method of Proof

Defendants argue that Hayes cannot proceed under the direct method of proof.

Although Hayes fails to specifically state that she is proceeding under the direct method of proof, it appears based on her arguments that she seeks to proceed under the direct method of proof. Hayes acknowledges that she has no direct evidence of unlawful discrimination. (Ans. 8). However, as indicated above, a plaintiff can proceed under the direct method of proof by presenting circumstantial evidence as well as direct evidence. *Serednyj*, 656 F.3d at 548.

The Seventh Circuit has indicated that the type of circumstantial evidence that is applicable to the direct method of proof includes evidence of "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent may be drawn." *Id.* In addition, for the direct method of proof, a plaintiff can point to evidence such as "that similarly situated employees outside of the protected group (pregnancy, sex, race, etc.) received systematically better treatment," or evidence that "the plaintiff was qualified for the job in question but passed over in favor of (or replaced by) a person not having the forbidden characteristic and that the employer's stated reason for the difference in treatment is unworthy of belief, a mere pretext for discrimination." *Id.*


### 1. Use of Concurrent Leave

Hayes argues that an intent to unlawfully discriminate against her is shown by Defendants' alleged failure to "follow its own policy" by "not permitting [Hayes] to use FMLA leave and other leave non-concurrently." (Ans. 14). However, Hayes

has not pointed to evidence to show that such a formal policy existed.  (SAF Par. 15);

(SAF Ex. D 57).  Defendants have pointed to evidence that the formal policy was

that employees would concurrently utilize accrued paid leave with FMLA leave.  (R

SAF Par. 15); (R SAF Ex. E).  Hayes has not shown that Defendants' actions in

requiring her to concurrently utilize her accrued paid leave and FMLA leave was

contrary to any federal or state law.  *See, e.g.,* 29 U.S.C. § 2612(d)(2)(stating that

"[a]n eligible employee may elect, or an employer may require the employee, to

substitute any of the accrued paid vacation leave, personal leave, or family leave of

the employee for leave provided under" the FMLA); *see also Dotson v. BRP U.S.

Inc.*, 520 F.3d 703, 709 (7th Cir. 2008)(stating that "[F]MLA may run concurrently

with workers' compensation benefits"); *Strickland v. Water Works and Sewer Bd. of

City of Birmingham*, 239 F.3d 1199, 1205 (11th Cir. 2001)(explaining that "an

employee who has an FMLA-qualifying condition may take both 12 weeks of unpaid

leave under the Act, plus any paid leave his employer provides unless the employee

chooses, or the employer requires, that the two leave entitlements run concurrently");

*Davis v. Nissan North America, Inc.*, 2008 WL 4773116, at *12 (M.D. Tenn.

2008)(stating that "[a]n employer can count FMLA leave days concurrent with leave

under an employer's policy or other leave").  Nor has Hayes pointed to evidence to

show that she was treated in a discriminatory fashion in that regard, as compared

other employees.  The Seventh Circuit has made clear that the PDA does not confer

preferential rights to an individual.  *Serednyj*, 656 F.3d at 547.  The PDA merely

requires employers to have policies that are "pregnancy blind," meaning that a

"policy complies with the PDA" if it "treat[s] nonpregnant employees the same as pregnant employees. . . ." *Id.* at 548-49. Since Hayes has not pointed to evidence that she was treated in a discriminatory manner in regard to the concurrent use of her leave, Hayes has not pointed to circumstantial evidence of any unlawful intent.

### 2. Shifting Reasons for Discharge

Hayes also argues that Defendants "shifted [their] reason for firing [Hayes] from what [they] had told her to what [they] told the" Equal Employment Opportunity Commission (EEOC). (Ans. 14). Hayes asserts that Defendants informed Hayes in a letter that her employment had been terminated due to her failure to return to work after she had exhausted her FMLA leave. (SAF Par. 39). Hayes contends that Defendants subsequently told the EEOC that Hayes was also terminated because of "incompetence." (SAF Par. 40).

Hayes attaches to her statement of additional facts as Exhibit K, Defendants' response to the EEOC charge filed by Hayes (EEOC Charge), which was sent to the EEOC (EEOC Response). In the EEOC Response, although Defendants include comments on the quality of Hayes' work, Defendants indicate that Hayes' "employment was terminated for failure to return to work, subsequent to exhausting her FMLA leave." (Resp. EEOC 018). In the EEOC Response, Defendants reference the quality of Hayes' work and argue that Hayes was not meeting her employer's legitimate expectations as part of their effort to show that Hayes will be

unable to establish a *prima facie* case of discrimination under Title VII.  (Resp.

EEOC 12). There is no specific reference to "incompetence" in the EEOC Response,

although Defendants do point to extensive facts showing that Hayes was failing to

properly perform her work duties well before she became pregnant.  Defendants

point out, for example, that in July 2009, Hayes stated in an email sent to Wynn, the

Superintendent, that "due to [her] taking vacation and several requests that [she]

ha[d] accommodated, some projects [were] at jeopardy of not being completed

before the beginning of the next school year."  (Resp. EEOC 4).  Some of the

projects that were in jeopardy of not being completed in a timely fashion included

"[p]reparing for annual audit," and "[a]ddressing IRS issues."  (Resp. EEOC 4-5).

The EEOC Response further explains that Hayes failed to keep current and accurate

accounting records, failed to reconcile bank statements with the general ledger, and

failed to file a current-year budget with the State of Illinois.  (Resp. EEOC 3).  To the

extent that Defendants at one point referenced in the EEOC Response Hayes' poor

work performance, the work performance factors were not the actual reason given for

her termination, and therefore such a comment was not inconsistent with the given

reason, which was the FMLA leave factor.  Hayes has thus not pointed to evidence

of a shifting explanation for her termination.


3.  Timing of Events

Hayes also argues that the timing of events indicates unlawful discrimination.

11

However, the undisputed record reflects that Hayes announced her pregnancy in September 2009. (R SF Par. 14). The undisputed record also reflects that there were extensive interactions between Hayes and Defendants concerning her leave and her return to work and that Hayes was not terminated until January 2010. (R SF Par. 14-41). The mere fact that Hayes was ultimately terminated after informing Defendants of her pregnancy does not show suspicious timing.

### 4. Totality of Evidence

Even when considering the totality of the evidence, Hayes has failed to show a convincing mosaic of circumstantial evidence from which a reasonable juror could infer intentional discrimination by Defendants. The undisputed facts indicate that Defendants terminated Hayes due to her failure to return to work after she had exhausted her FMLA leave. The undisputed facts clearly show that Hayes was given clear notice of her need to return to work after the expiration of her leave and that she failed to do so. Defendants also gave Hayes an opportunity to return to work, and waited until Hayes had accrued approximately a month of un-excused absences before finally terminating Hayes' employment. The court also notes that the record indicates that Hayes could have applied for a 60-day disability leave, but that Hayes failed to follow the instructions for properly applying for such leave. (EEOC Resp. 9-10); (R SF Par. 72). Hayes has not shown that Defendants' stated reason for termination is unworthy of belief or is a mere pretext for discrimination. Therefore,

based on the above, Defendants' motion for summary judgment on the Title VII discrimination claim (Count I) is granted.


## II.  Title VII Retaliation Claim (Count II)

Defendants move for summary judgment on the Title VII retaliation claim (Count II).  As with a Title VII discrimination claim, for Title VII retaliation claim a plaintiff can proceed under the direct or indirect method of proof.  *Serednyj*, 656 F.3d at 556.  To proceed under the indirect method of proof, a plaintiff must establish a *prima facie* case of retaliation by showing that:   "(1) she engaged in statutorily protected activity; (2) she was performing her job to her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Id.* at 557.  If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to point to a "legitimate, nondiscriminatory reason for terminating her," and if such a reason is provided, the burden shifts back to the plaintiff to show that the given reason was a pretext for unlawful retaliation.  *Id.* Under the direct method of proof a plaintiff must establish that: "(1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action."  *Id.*

Hayes has not argued that she can proceed under the indirect method of proof, and has failed to point to sufficient evidence to proceed under the indirect method of

proof.  In regard to the direct method of proof, Hayes argues that she can point to sufficient circumstantial evidence of retaliation.  Hayes contends that Defendants terminated her employment on January 4, 2010, four days after Wynn and the Director of Human Resources received an email from Hayes' attorney indicating that Hayes was pursuing the EEOC Charge.  (Ans. 14).  However, the undisputed record indicates a series of negotiations between Hayes and Defendants concerning her leave and return to work, and that in a December 17, 2009 letter, which was sent prior to Hayes filing her EEOC charge, the Board informed Hayes that it had voted to discharge Hayes for failing to return to work after she had exhausted her FMLA leave.  (R SF Par. 38-40).  Also, even though the termination occurred shortly after Hayes filed the EEOC Charge, there was nothing suspicious in the timing, since it is undisputed that the termination was made on January 13, 2010, at the next scheduled Board of Education meeting after Hayes failed to comply with the December 17, 2009 letter by failing to return to work.  (R SF Par. 40).  Thus, Hayes has not pointed to sufficient evidence of a causal connection between her protected activity and her termination.  Even when considering all the evidence in its totality, Hayes has not pointed to sufficient evidence to proceed under the direct method of proof. Therefore, Defendants' motion for summary judgment on the Title VII retaliation claim (Count II) is granted.

### III.  ADA Discrimination Claims (Count III)

Defendants move for summary judgment on the ADA discrimination claims.

#### A. Disparate Treatment Claim

Defendants argue that Hayes cannot proceed under either the direct or indirect method of proof on her ADA disparate treatment claim.  A plaintiff who brings an ADA disparate treatment claim and who seeks to defeat a defendant's motion for summary judgment can proceed under either the direct or indirect method of proof. *Dickerson v. Board of Trustees of Community College Dist. No. 522*, 657 F.3d 595, 601-02 (7th Cir. 2011).  For the indirect method of proof, "a plaintiff must first establish a *prima facie* case of discrimination by showing that (1) [s]he is disabled under the ADA; (2) [s]he was meeting h[er] employer's legitimate employment expectations; (3) [s]he suffered an adverse employment action; and (4) similarly situated employees without a disability were treated more favorably. *Id.*  Hayes has not identified similarly-situated employees outside the protected class.  In addition, Hayes has failed to point to sufficient evidence that shows she was disabled under the ADA, and thus Hayes cannot proceed under the direct or indirect methods of proof.  Although Hayes contends that complications of pregnancy and hypertension "can be disabilities under the ADA," Hayes has failed to point to sufficient evidence to show that in her case, the severity of her conditions was such that she was disabled under the ADA.  (Ans. 10).  At the summary judgment stage, Hayes can no longer

rely upon mere allegations. For example, in *Serednyj*, the plaintiff asserted that she

was disabled based on pregnancy-related complications. 656 F.3d at 554-56. The

Court indicated that "[t]o meet the definition of disability, [the plaintiff needed to]

show that her physical impairment substantially limit[ed] a major life activity." *Id.*

The Court also noted that "[p]regnancy is, by its very nature, of limited duration, and

any complications which arise from a pregnancy generally dissipate once a woman

gives birth" and that to determine whether in the plaintiff's particular case, she was

disabled, the court should consider "the nature and severity of the impairment; the

duration or expected duration of the impairment; and the permanent or long term

impact, or the expected permanent or long term impact of or resulting from the

impairment." *Id.* (internal quotations omitted)(quoting *Kampmier v. Emeritus Corp.,*

472 F.3d 930, 937 (7th Cir. 2007)). It was incumbent upon Hayes to point to

sufficient evidence to show that an impairment substantially limited one of her major

life activities, and Hayes has failed to do so in response to the instant motion. Hayes

provides no analysis of pertinent evidence relating to her major life activities, and

instead provides only conclusory statements regarding her diagnosis of hypertension

and high blood-pressure and impairments of her cardiovascular and circulatory

system. (Ans. 10). In response to Defendants' statement of material facts, Hayes

does not dispute that she testified at her deposition that she was capable of

performing major life activities. (R SF Par. 23). Hayes' only qualification to her

response is that at her deposition, she testified that at times she had complications

with breathing and that "from time-to-time during her pregnancy she would have to

16

watch how much she stood and would have to take it easy." (R SF Par. 23).

Hayes also argues that she was regarded as disabled, if not actually disabled. (Ans. 10). To be regarded as disabled, a plaintiff must establish that: "(1) the employer mistakenly believes the employee has an impairment that substantially limits a major life activity, or (2) the employer mistakenly believes the employee's actual, but nonlimiting, impairment substantially limits a major life activity." *Serednyj*, 656 F.3d at 556. The only argument presented by Hayes to support her contention that she was regarded as disabled is her contention that Defendants "replace[d] [Hayes] as soon as [they] learned that [Hayes] had a high-risk pregnancy. . . ." (Ans. 10-11). However, the undisputed record shows that Hayes was given an opportunity to return to work as late as December 2010. Hayes has not shown that Defendants attempted to permanently replace her after learning of her high-risk pregnancy. To the extent that Hayes seeks to rely on the fact that another individual was hired to temporarily fill-in for Hayes during her absence, the undisputed record shows that Hayes was an administrator who supervised various employees and performed certain essential functions for the District. Hayes was seeking to take an extended leave, and Hayes has not pointed to evidence indicating why a temporary substitute would be unreasonable under such circumstances. Thus, Hayes has not pointed to evidence indicating that Defendants believed that she was disabled. Defendants, on the other hand, have pointed to correspondence in which they expressly indicated to Hayes that they did not believe Hayes was an individual with a

disability. (Hayes Dep. Ex. 16, 2). Hayes admits that Defendants sent her such correspondence. (R SF Par. 27). Thus, Hayes has failed to point to sufficient evidence that would indicate that she was regarded as disabled by Defendants.

## B. Failure to Accommodate Claim

Defendants also move for summary judgment to the extent that Hayes seeks to bring an ADA failure to accommodate claim. In order for a plaintiff bringing an ADA failure to accommodate claim "[t]o survive a motion for summary judgment, a plaintiff must present the court with evidence that, if believed by a trier of fact," would show that "(1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability." *Kotwica v. Rose Packing Co., Inc.*, 637 F.3d 744, 747-48 (7th Cir. 2011)(internal quotations omitted)(quoting *EEOC v. Sears, Roebuck & Co.,* 417 F.3d 789, 797 (7th Cir. 2005)). Hayes' failure to accommodate claim fails at the outset since, as explained above, she has not pointed to sufficient evidence to show that she is disabled under the ADA.

## 1. Qualified Individual

Defendants argue that even if Hayes could show that she was disabled, the failure to accommodate claim fails since Hayes was not a qualified individual with a disability. A "qualified individual" is defined as "an individual who, with or without

reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). In opposition to the instant motion, Hayes has failed to point to evidence showing that she was a qualified individual under the ADA. In response to the instant motion, Hayes merely indicates in a conclusory fashion that her request to work from home was a request for a reasonable accommodation, without referencing any evidence in the record. (Ans. 12). Defendants point to evidence showing that Hayes had applied for benefits through the District's disability insurance carrier. The disability application (Application), which was completed by Hayes' physician, indicates that Hayes was incapable of performing even light duty work and that she was unable to return to work until 8 weeks after delivery. (Hayes Dep. Ex. 12). It is undisputed that based on such representations, Hayes was able to obtain approximately $30,000 in disability benefits. (R SF Par. 25). Defendants also point out that in a letter written by Hayes herself on September 22, 2009, Hayes indicated that she would be unable to return to work until May or June 2010. (Hayes Dep. Ex. 9). Thus, the undisputed facts clearly show that Hayes was not a qualified individual under the ADA.

Hayes also argues that Defendants failed to engage in the required interactive process for arriving at a reasonable accommodation. *See Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 545 (7th Cir. 2008)(stating that the "'ADA requires that employer and employee engage in an interactive process to determine a reasonable accommodation'")(quoting *Baert v. Euclid Beverage, Ltd.,* 149 F.3d 626, 633 (7th

Cir. 1998)).  The undisputed record shows that Defendants considered Hayes'
requests for an accommodation, but that to the extent no reasonable accommodation
could be readily agreed upon, it was due to Hayes' own interjection of issues un-
related to her alleged disability.  For example, it is undisputed that in the fall of 2009
while Hayes was on leave, Hayes submitted to Defendants a Memorandum of
Understanding (MOU) outlining her proposed terms and conditions of her return to
employment.  (R SF Par. 30).  In the MOU, Hayes stated that she would "agree to
resume [her] duties as the Business Manager based on the following conditions:,"
and that the conditions included terms such as: (1) "full control of personnel and
duties in the Business Department," (2) that at "a minimum" the District hire two
"highly qualified temporaries" to assist the Senior Accountant in the Business
Department, (3) that the District hire a Business Department Assistant, (4) that Hayes
be given the support of the Superintendent, on any decisions to write up staff for
disciplinary violations when necessary, (5) that "Business Office policies and
schedules be followed and enforced," (6) that Hayes be given authority to release
temporary employees and hire new ones, (7) that requests by the Superintendent and
other administrators go through Hayes, rather than directly to staff in the Business
Department, and (8) that "staff relative to Mealtime (food service workers) and
custodians at each school shall be held accountable for job responsibilities and must
adhere to the District guidelines as set."  (Hayes dep. Ex. 19).  Thus, Hayes
attempted to use the ADA interactive process not to discuss a reasonable
accommodation for her alleged disability, but rather to negotiate other matters

relating to her job.

Hayes also requested in the MOU that she be allowed to work three days in the office and two days at home.  (Hayes dep. Ex. 19).  However, Hayes admits that she stated that her offer to work three days in the office was contingent on the approval of Hayes' physician, and Hayes admits that she never sought such clearance from her physician.  (Hayes dep. Ex. 19); (R SF Par. 30-31, 35-36).  In addition, Hayes has not pointed to evidence at this juncture showing that allowing her to work at home would have been reasonable considering the extensive responsibilities of her position, including the direct supervision of other employees.  (R SF Par. 73).  In response to Defendants' statement of material facts, Hayes also argues that a reasonable accommodation would have been to allow her intermittent leave.  (R SF Par. 73).  However, the undisputed record indicates that Hayes made no such request.  (Hayes dep. Ex. 15).  Hayes has therefore failed to point to sufficient evidence to support an ADA failure to accommodate claim.


C.  Per Se Violation of ADA

Hayes argues that the statement in the December 17, 2009 letter sent by Defendants to Hayes that Hayes needed to return to work with "full medical releases" violated the ADA.  (Hayes Dep. Ex. 23).  Hayes contends that Defendants committed a *per se* violation of the ADA by requiring a full doctor's release.  Hayes cites a Ninth Circuit case in support of her proposition.  (Ans. 11).  The Seventh

Circuit, however, has indicated that such a requirement is not an automatic violation of the ADA, and that the court should consider the evidence on a case-by-case basis in assessing whether the ADA was violated. *See, e.g., Lenker v. Methodist Hosp.*, 210 F.3d 792, 798 (7th Cir. 2000). The undisputed record in this case indicates that Defendants merely required Hayes to provide documents from her physician showing that she was capable of doing her job. The record indicates that Hayes' physician had indicated that Hayes was not able to work and that Defendants merely wanted to protect themselves by ensuring that the physician had cleared Hayes for work before she returned. Defendants did not state in the December 17, 2009 letter that they would be unwilling to accommodate Hayes in any way if she had minor physical limitations. Thus, Hayes has not pointed to sufficient evidence to show any *per se* violation of the ADA. Based on the above, Defendants' motion for summary judgment on the ADA discrimination claims is granted.

IV.  ADA Retaliation Claim (Count IV)

Defendants also move for summary judgment on the ADA retaliation claim. For an ADA retaliation claim, a plaintiff opposing a defendant's motion for summary judgment can proceed under the indirect or direct method of proof. *Dickerson*, 657 F.3d at 601. Hayes has not argued that she can proceed under the indirect method of proof, and has not pointed to evidence to establish a *prima facie* case of retaliation. In addition, Hayes has failed to point to sufficient direct or circumstantial evidence

of retaliation to proceed under the direct method of proof.  As indicated above, in regard to the Title VII retaliation claim, although Hayes was terminated after filing the EEOC Charge, the undisputed record clearly indicates that there was a series of attempts between Defendants and Hayes to work out their dispute during the fall of 2009, and that Defendants were intending to terminate Hayes' employment prior to the filing of the EEOC Charge.  There is a lack of evidence in this case indicating that Defendants retaliated against her because she exercised her rights under the ADA.  Therefore, Defendants' motion for summary judgment on the ADA retaliation claim is granted.

## V.  FMLA Retaliation Claim (Count V)

Defendants move for summary judgment on the FMLA retaliation claim.  The FMLA makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA.  *Makowski*, 662 F.3d at 823-24 (quoting 29 U.S.C. § 2615(a)(2)).  Similar to Title VII retaliation claims, a plaintiff bringing an FMLA retaliation claim can proceed under the indirect or direct methods of proof to defeat a Defendants' motion for summary judgment.  *Id.*  Hayes has failed to point to sufficient evidence to proceed under the indirect method of proof.  Nor has Hayes pointed to sufficient direct or circumstantial evidence to proceed under the direct method of proof in regard to her FMLA claim.  There is a lack of evidence in this case indicating that

Defendants retaliated against Hayes because she exercised her rights under the FMLA.  The undisputed record shows that Defendants provided Hayes with the leave that she was entitled to under the FMLA, but that when she took more leave than was provided for under the FMLA, her employment was terminated.  Therefore, Defendants' motion for summary judgment on the FMLA retaliation claim is granted.


## VI.  FMLA Interference Claim (Count VI)

Defendants move for summary judgment on the FMLA interference claim. The FMLA provides that "an employer must not 'interfere with, restrain, or deny the exercise of or the attempt to exercise' any FMLA rights."  *Id.* at 824 (quoting 29 U.S.C. § 2615(a)(1)).  For an FMLA interference claim, a plaintiff must show that "(1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled."  *Id.* (internal quotations omitted)(quoting *Goelzer v. Sheboygan Cnty., Wis.*, 604 F.3d 987, 993 (7th Cir. 2010)).  As indicated above, the undisputed record shows that Defendants provided Hayes with all protections that she was entitled to under the FMLA.  The undisputed record indicates that it was only when Hayes sought benefits beyond those provided in the FMLA and failed to return to work that Defendants took an adverse employment

action against Hayes.  Therefore, Defendants' motion for summary judgment on the FMLA interference claim is granted.


## VII.  Breach of Contract Claim (Count VII)

Defendants move for summary judgment on the breach of contract claim.  As indicated above, the undisputed evidence shows that after Hayes had exhausted all leave that she had accrued and was entitled to under the law, she did not return to her duties at work.  The undisputed record also shows that Defendants clearly informed Hayes of the deadline for her return to work, and that she elected not to comply.  Thus, the undisputed record shows that Hayes failed to honor her obligations under her employment contract to perform the tasks for her position.  Therefore, Defendants' motion for summary judgment on the breach of contract claim is granted.  The court notes that Defendants have also filed a motion to deem facts admitted pursuant to Local Rule 56.1.  That motion is stricken as moot.

## CONCLUSION

Based on the foregoing analysis, Defendants' motion for summary judgment is granted in its entirety. Defendants' motion to deem facts admitted is stricken as moot.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: February 22, 2012